SOUTHERN RY. CO. IN MISSISSIPPI *v.* ARCHER ET AL.

[82 South. 261, Division B. No. 2652.]

1. NAVIGABLE WATERS. *Deed of riparian land. Construction.*
   Where in a deed the land is described as bounded on the banks or shore of a stream, the grantee does not take title to the center of the stream, but the bank or shore is the monument and not the stream.

2. SAME.
   Such a deed does not cover riparian rights in the water or bed of the stream lying along and in front of the lands conveyed.

APPEAL from the chancery court of Washington county. HON. E. N. THOMAS, Chancellor.

Suit by Kate C. Arthur and others against the Southern Railway Company in Mississippi. From a decree for complainant, defendant appeal.

The facts are fully stated in the opinion of the court.

*T. C. Catchings,* for appellant.

Laying for the moment discussion as to the technical effect to be given to the descriptice words of the deed of conveyance to the Georgia Pacific Railway Company, the facts stands out that the lands conveyed were on the Banks of the Mississippi River and were so declared to be by the terms of the deed.

If the members of this court, without any regard to this controversy, should read the deed and examine the map it is respectfully submitted that without hesitation it would be declared that the western side of the lands conveyed were bounded by the Mississippi River and that under the rule established in this state all riparian rights were appurtenant to the land.

A very interesting case to this effect is *McDonald* v. *Whitechurst et al.*, 47 Fed. 757. The following quotation is made literally from the opinion in that case: "The general propositions may be accepted as true." First, that when lands are granted by metes and bounds, all the area within those bounds, and no more passes; second, that fixed and permanent monuments control courses and distances where there is a discrepancy between these latter as indicated by the monuments; third, that only the land described in a deed by metes and bounds can be acquired by a grantee, and not lands outside of such description, by way of appurtenance and accession. But, like all general propositions, however sound, these are open to exceptions. The evident intention of the parties to a deed is often held to override the literal purport of the terms of description employed by its draughtsman. In short, the propositions which have been stated are not arbitrary or inexorable, and will often be modified by the courts, even in respect to lands surrounded on all sides by other lands.

But there is a very important class of cases in which these propositions are not enforced, except in

instances in which it appears to have been the obvious intention of the parties to deeds that they should be. I allude to the class of cases relating to lands boardering on streams or rivers. In such cases "it may be considered as a canon of American jurisprudence that where the calls in a conveyance of land are for two corners at, in, or on a stream, or its bank and there is an intermediate line extending from one such corner to the other, the stream is the boundary." *St. Clair Co.* v. *Lovingston,* 23 Wall. 64. This language is used by the supreme court generally of lands lying on streams, without reference to the question whether the deeds conveying them expressly call for the streams or not. If, as in the case at bar, it appears from the evidence that the land does in fact lie on a stream, the canon of law applies, whether the deed expressly declares that fact or not."

In this case, as in that, the descriptive words of the deed to the Georgia Pacific Railway Company and the map filed with that deed show conclusively that the land conveyed to the Georgia Pacific Railway Company does, as a matter of fact, lie on the Mississippi River.

Hence, under the law as laid down in that case, the land conveyed must be deemed to be bounded on its west side by the Mississippi River, even if the court should be of the opinion that the deed does not call expressly for the Mississippi River.

It will be noted also, that in that case the court quoted with approval the following from the case of *St. Clair Co.* v. *Lovingston,* 23 Wall. 64, to-wit: "It may be considered as a canon of American jurisprudence that, where the calls in a conveyance of land are for two corners at, in, or on a stream, or its bank, and there is an intermediate line extending from one such corner to the other, the stream is the boundary." *Whitehurst* v. *McDonald; County of St. Clair* v. *Lovingston,* 23 Wall, 46, and the *Railroad Co.* v. *Schurmeir,* Wall 272; *County*

of *St. Clair* v. *Lovington, Banks* v. *Ogden* 2 Wall. 68; *Lembeck* v. *Nye*, 24 N. E. 686; *Sizon* v. *City of Logansport*, 50 N. E. 378; *Kent et al* v. *Taylor et al.*, 13 Atl. 419; *Castle* v. *Elder*, 59 N. W. 197; *Sleeper* v. *Laconia*, 60 N. H. 201; *Woodman* v. *Spencer*, 54 N. H. 507; *Dovaston* v. *Paine*, 2 Sm. L. C. H. & W., Notes 213, 216, 232, 234, 235, 237, 238; *Motley* v. *Sargent* 119 Mass. 231; *Peck* v. *Denniston*, 121 Id. 17; *O'Connell* v. *Bryant*, Id. 557; *Low* v. *Tibbetts*, 72 Me. 92; *Oxton* v. *Groves*, 68 Me. 372; s. c. 28 Am. Rep. 75; *Cottle* v. *Young*, 59 Me. 105, 109; *Johnston* v. *Anderson*, 18 Id. 76; *Kentucky Lumber Co.* v. *Green et al.*, 8 S. W. 439; *Runion* v. *Alley*, 39 S. W. 849; *Robw et al.* v. *Cape Fear Lumber Company*, 38 S. E. 896; *Davis* v. *Commonwealth Land and Lumber Company*, 141 Fed. 722; *Porter* v. *Sullivan*, 73 Mass. 441; *Archer* v. *Greenville Sand & G. Co.*, 233 U. S. 66; *Morgan* v. *Reading*, 3 S. & M. 366; *Magnolia* v. *Marshall*, 39 Miss. 109.

In conclusion, it is respecfully submitted that it appears from the descriptive words of the deed, as illustrated by the map, that the Georgia Pacific Railway Company, acquired from Deaton and Skinner not only the land technically outlined by the descriptive words of the deed but all riparian rights in front of this land, as this land clearly as a matter of fact fronted on and was bounded by the Mississippi River.

*Percy Bell* and *Sillers & Sillers*, for appellees.

The appellants must meet this issue squarely. The case hinges on the question as to whether the stream bank in these different descriptions conveying each particular tract is the boundary and comes within the rule laid down in Farnham above quoted, and many others authorities which we will hereafter quote or whether it comes within the rule invoked by appellants that the river was the western boundary of these lots, and not

the lines laid down, and shown on the map or plat as part of the deed, along the banks.

Counsel for appellant opens his argument with the following statement: "If the members of the court without any regard to this controversy, should read the deed and examine the map, it is respectfully submitted that without hesitation it would be declared that the western side of the lands conveyed were bounded by the Mississippi, and that under the rule as established in this state all riparian rights were appurtenant to the land."

Counsel should have stated that if the members of the court without any regard to this controversy and the facts, and the law, should read the deed and examine the map they might declare the riparian rights vested in the appellants. The great stumbling block to such a conclusion are the facts and the law.

We say that if the court will take the deed and the map and the law the elementary law—governing the rights of riparian owners and the well-considered decisions based on such law, the court will without hesitation, declare that Deaton and Skinner conveyed no riparian rights to the Georgia Pacific Company, and the appellants have acquired none, and that such rights are vested in appellees by inheritance.

Counsel for appellants further says that this court perfectly understood the contention in the case of *Archer* v. *The Southern Railway Company*, 75 So. 251. We agree with counsel. The excerpt quoted by counsel from the opinion of the court in that case shows a very clear understanding of the contention in that case, and we feel quite sure the court will grasp with equal clearness the contention in this case.

Appellees contend that the deed to the Railway company conveys only to the banks of the river, and that

the Railway Company is held to the calls of its deed, the manifest purpose of which was to convey lands for switching and other railroad purposes, and not for marine purposes, where water and access to water is essential and that it was the manifest purpose of the grant to Deaton and Skinner, to reserve their riparian rights which being located in and adjacent to the growing city of Greenville on the greatest river of the continent, were very valuable.

"If the grant is bounded by well marked lines on the banks, the title would extend only so far as the line, and the grantee will acquire no riparian rights." "Where, in a deed, the land is described as bounded on the bank or shores of a stream, the grantee does not take title to the center, but the bank or shore is the monument and not the stream. Farnham, "Waters and Water Rights" Volume 2, page 1475. This same rule is laid down in the American and English Enc. Law (2 Ed.), pages 830 and 831, in the following language: "Where in a deed the land is described as bounded on the bank or shore of a stream, the grantee does not take to the center, but the bank or shore is the monument, and not the stream."

"But where the stream itself is the boundary or the line is described as running along the stream or as extending from one object on the bank to another as for instance 'bounding on' and 'extending from' one tree on the shore to another, then the stream is the monument and the *filum acqua* is the boundary.

The text in the first paragraph is supported by numerous authorities. 5 cyc., pages 902-903; *Packer* v. *Bird,* 34 Law. Edition, (U. S. Court Reported), page 819 (A); *Freeman* v. *Bellegard,* 41 Pac. 289; *Axline* v. *Shaw,* 17 So. 411; *Bradford* v. *Cessy,* 45 Me. 9; *Trustees* v. *Kirk,* 68 N. Y. 459; *City of Boston* v. *Richardson,* 13 Allen, 146, text, 154; *Clements* v. *Burns,* 43 N. H. 609, text 616; *Nickerson* v. *Crawford,* 17 Me. 245,

and authorities cited on page 246; *Chapman* v. *Edmands,* 3 Allen, 512, text 514; *Niles* v. *Patch,* 13 Gray, 254; *Murphy* v. *Capland,* 57 Iowa, 515; *Morgan* v. *Reading,* 3 S. & M. 366; *Mayham* v. *Marshall,* 39 Miss. 109; *Bradford* v. *Creassy,* 45 Me. 9; *Crane* v. *Lynch,* 27 Pa. Super Ct., 565; *Hatch* v. *Dwight,* 1 American Decisions 145; *Freeman* v. *Leighton,* 28 Atl. 53; *Murphy* v. *Copeland,* N. W. 691; *Dunlap* v. *Storer,* Fed. Case 4164; *Thomas* v. *Hatch,* Fed. Case 13, 899; *Rockwell* v. *Baldwin,* 53 Ill. 19, 4 Hill, 369; *Whitmore* v. *Brown,* 61 Atl. 985; *Hatch* v. *Dwight,* 9 A. M. Dec. 145; *Jones* v. *Soulard,* 26 Law Ed. (U. S. Supreme Court) 604.

COOK, P. J., delivered the opinion of the court.

The bill alleges that the complainants are the owners of certain lands described, together with all riparian rights in and to the water and bed of the Mississippi river lying along and in front of said lands.

That June 27, 1888, Joshua Skinner and James A. Deaton conveyed to the Georgia Pacific Railway Company a part of the lands then owned by them as shown by a deed from them to the railway company, of which a copy is attached to the bill.

The real contention is that by the descriptive words of the conveyance the grant to the railway company was bounded on the west by the bank of the Mississippi river, and that it did not include riparian rights.

That the riparian rights were retained by Skinner and Deaton, and never passed to the railway company through whom the Southern Railway Company claims.

That the Southern Railway Company, assuming to be the riparian owner, had executed a lease to J. M. Grasty, January 1, 1910, which lease is also made an exhibit to the bill of complaint.

It appears from the lease that the railway company granted to Grasty the right to take gravel from the

bed of the river in front of and bordering on the property of the railway company.

It is alleged that lying along the river in front of the land granted by Deaton and Skinner to the Georgia Pacific Railway Company, and by the Southern Railway Company leased to Grasey, as stated, is an island of gravel bearing sand, and that the appellee Grasty had sold to the appellee the Greenville Sand & Gravel Company gravel taken from the bed of the river of the value not less than fifty thousand dollars.

That by reason of the claim of title to said gravel bar by the appellee the Southern Railway Company a cloud was cast upon the title of complainants to said bar, which they were entitled to have canceled and removed by decree of the court.

An accounting is prayed by the bill of the amount of sand and gravel taken from the river, and that a decree be rendered against them accordingly.

The conveyance upon which rests the title to the property in controversy is as follows:

"In consideration of seven thousand five hundred and fifty-six dollars cash to us paid, receipt of which is hereby acknowledged, we hereby convey and warrant to the Georgia Pacific Railroad Company that certain plat of land situated in the Skinner addition to the city of Greenville in the county of Washington, and state of Mississippi, described as follows, to wit: Beginning at a stake the southeast corner of block 60, bearing north thirty-four and one half east thirty seven feet from the northeast corner of block thirty-eight, thence north fifty-five and one half west nine hundred and thirty-eight feet to the east line of the land of said railway company boardering on the Mississippi river, and conveyed by C. P. Huntingdon (coinciding with the west line of Walnut street produced) thence along said line north thirty-four and one-half degrees east three hundred feet: thence north fifty-five and one-half degrees

west to Mississippi river: thence up the banks of said river far enough to embrace a strip of land one hundred feet wide north and along the line to the river: and designated as lot four of black forty-five thence south fifty-five and one-half east to the intersection with the right of way of said railway company in block 43, thence following the line of said right of way to a point of bearing north thirty-four and one-half east from the place of beginning, being the northeast corner of block 60, thence thirty-four and one-half degrees west thirty-seven and one-half feet to the point of beginning, also that certain other tract or plat of land situated in the county and state aforesaid, described as follows, to wit: Commencing at the northwest corner of block 4 of the Huntingdon addition to the city of Greenville, thence south thirty-four and one-half west one thousand eight hundred and forty-two feet to the eastern crest of the public levee, the place of beginning, thence along said levee south twenty and three-fourths east two hundred and twenty-three feet; thence south thirty-three and one-half degrees west nine hundred and eighty-six feet, thence south twelve and one-half degrees west one thousand and five feet, thence south thirteen degrees and ten minutes west thirty-eight feet, thence south twenty-five and three fourths west, one thousand four hundred and thirty-five feet, thence north sixty-four and one-half degrees nine hundred and fifty feet to the Mississippi river, thence up the bank of said river to its intersection with a line one hundred and sixty feet south of and parallel to the north side of Walthall street; thence along said line south fifty-five and one-half east two hundred and forty-two feet, thence north thirty-four degrees east eighty-eight feet to the east crest of levee, thence south twenty and three-fourth degrees east to the place of beginning, containing fifty-eight and forty-five hundredths acres. Also certain other tract or plat of land in the county and state aforesaid, described

as follows, to wit: Beginning at the point where the north side of Walthall street intersects the outer or west slope of the public levee; thence north one-fourth degree east three hundred and twenty feet, thence south thirty-four and one-half west two hundred and seventy feet, thence south fifty-five and one-half east one hundred and seventy-eight feet to the point of beginning, containing fifty-five hundredths of an acre. Also a perpetual right of way from the present right of way of said railway company, through any land owned by us, and Poplar street of said city of Greenville as produced through Skinner addition to the said city, and as shown on map attached hereto, and made a part hereof, to the last above-described tract of land, said right of way to be thirty feet wide and to be so located as to enable said Georgia Pacific Railway Company to connect its line of road when located with said last two tracts of land, hereinabove described and containing fifty-nine acres and to properly construct, operate a railroad thereon. Also that certain other tract of land situated in the county and state aforesaid and described as follows: Commencing at a point where the section line between sections 10 and 11, township 18, range 9 west, intersects the outer or western base of levee, then following said outer base of levee, north fifty-nine degrees forty minutes east three hundred and ten feet, thence north forty-nine degrees three hundred and fourteen feet, thence north forty-four degrees east, two thousand one hundred and seventy feet, thence north twenty-eight and one-fourth east one hundred and fifteen feet, thence north fifty-one west nine hundred and ten feet, to the bank of the Mississippi river, thence along the banks of said river to its intersection with section line between sections 10 and 11, thence along said section line south fifty-four and one-half degrees east eight hundred and forty feet to the point of beginning, containing sixty acres, more or less. Also a right of way to said last-

120 Miss.—25

described tract of land. [Here follows description of right of way.] All of said several tracts of land and rights of way conveyed herein are shown on map of same hereto attached and made a part hereof. In testimony whereof we have hereunto set our hands, this 27th day of June, 1888.

"J. A. Deaton.
"J. Skinner."

As we view this case, its determination depends almost entirely upon a question of fact. The facts are recited in the bill of complaint and the exhibits to the bill of complaint.

After ascertaining the facts, we do not believe that there is much trouble in applying the law of the case. Perhaps more decisions have been rendered upon questions similar to the question here presented than almost any other single question discussed by the courts.

If the conveyances mentioned in the bill of complaint describe the land in controversy as bordering upon the Mississippi river, the learned chancellor was wrong. If, on the other hand, the boundary nearest to the river is confined to the banks of the river, the chancellor should be affirmed. Stated in another form, if the descriptions in the conveyances carve out a certain area of land, and do not use the river as a boundary, the riparian rights of the grantor do not pass to the grantees. As stated in the brief filed by the appellant:

"The real contention [of appellee] is that by the descriptive words of the conveyance the grant to the railway company was bounded on the west by the bank of the Mississippi river, and that it did not include riparian rights."

The original conveyances to the railway company were for railroad purposes, and but for the subsequent formation of the bar and the development of the gravel business the courts perhaps would never have been called upon to solve the questions presented by this appeal.

Appellant relies largly upon the language employed by the Supreme Court of the United States in *County of St. Clair v. Lovingston,* 23 Wall. 46, 23 L. Ed. 59, which is as follows:

"It may be considered as a canon of American jurisprudence that, where the calls in a conveyance of land are for two corners at, in, or on a stream or its bank, and there is an intermediate line extending from one such corner to the other, the stream is the boundary."

We do not believe that the question here presented was decided by the supreme court in the above-quoted paragraph.

If we read the several descriptions employed in the conveyances to the railroad company, it is difficult to reach the conclusion that the river was the monument for the western line of the land conveyed. But when we examine the map in connection with the descriptions in the deed, all uncertainty disappears.

The tracings on the map of the line nearest to the river show that the western boundardy did not extend to the river, or to the water. On the contrary, the western boundary was traced along the bank, leaving the land now in controversy between the defined western boundary of the land described in the deed, and the Mississippi river. Stated in another way, the western boundary of the land conveyed to the railway company stops short of the river, the monument is the banks and not the river.

Surely no canon of construction will change the fact that the grantor and the grantees agreed upon the boundaries of the land conveyed, and when the agreed boundaries do not extend to or touch the river, we are not authorized to infer that the parties to the contract intended to make the river the western boundary. We are not aware of any rule of law that will prevent parties from carving out lands which are the subject of sale. The land may be described as the land inclosed by

permanent walls or fences, and when this is done the land conveyed is bounded by the inclosure.

When the writer began an investigation of this case it was a surprise to discover that the precise question of law involved has not been discussed by this court. The writer has had a definite idea of the rule in Mississippi, and it coincided with the rule announced in Farnham on Water Rights, vol. 2, page 1475, viz.:

"If the grant is bounded by a well-marked line on the bank the title would extend only so far as the line and the grantee will acquire no riparian rights."

"Where in a deed the land is described as bounded on the bank or shore of a stream, the grantee does not take title to the center of the stream, but the bank or shore is the monument and not the stream."

This, we think, is the rule in this state. It is supported, we believe, by best of reason and common sense. It seems perfectly clear that the owner of real estate may by proper description convey any part or description of his real estate, and that he does not forfeit the remainder, or any right appertaining to the remainder. It is not infrequent that the banks of the Mississippi are far removed from the river proper, and we do not believe that the appellee's predecessors in title intended to part with their riparian rights by the conveyance of the land described in the deeds.

*Affirmed.*