ARCHER *et al. v.* SOUTHERN RY. CO. IN MISSISSIPPI *et al.*

(Division B. April 2, 1923.)

[95 South. 680. No. 22870.]

1. NAVIGABLE WATERS. *Evidence held sufficient to establish river as western boundary line of lands conveyed for riparian use.*

   Where a deed describing the western boundary of land reads as follows: "Thence north sixty-four and one-fourth degrees nine hundred and fifty feet to the Mississippi river, thence up the bank of said river to its intersection with a line one hundred and sixty feet south of the parallel to the north side of Walthall Street"—and there is attached to this deed as an exhibit thereto a map which indicates the land conveyed, and civil engineers testify that the language of this deed, when considered with the map, show the western boundary line to be the river, and other testimony shows that these lands were purchased for riparian uses; the finding of the lower court that the western boundary was the river, and that riparian rights passed to the grantee, is sustained by the testimony.

2. NAVIGABLE WATERS. *Riparian rights pass to grantee where boundary line is coincident with water.*

   Where the boundary line is coincident with the water, raparian rights passed to the grantee.

3. NAVIGABLE WATER. *Riparian rights pass in deed where boundary line was river.*

Where the southern starting point of the western boundary line is the river, and the northern terminus of this line is also the river, and where the testimony shows that there is no land between the western boundary line and the river, though the deed reads from the southern starting point, thence up the bank of the river, this boundary line is the river, and riparian rights passed to the grantee under the deed.

APPEAL from chancery court of Washington county. HON. E. N. THOMAS, Chancellor.

Suit by Kate C. Archer and others against the Southern Railway Company in Mississippi and others. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Sillers & Sillers,* and *Bell & White,* for appellants.

The land claimed by appellants in their bill, is part of a bar or island which has formed in the Mississippi river opposite a thirteen hundred acre tract from which said small tracts were carved and which vested in the appellants because of having made or formed within the boundaries of the tract, or part of the tract formerly caved into the river, and by accretion to, and on the bed of the river reserved in a deed from Deaton and Skinner, conveying the said small lots or tracts to the Georgia Pacific Railroad. Appellants contend that J. A. Deaton and Joshua Skinner conveyed only the lots of land within the calls of the deed (Exhibit "3" to Bill) to the Georgia Pacific Railroad Company and the map made part of the said deed in aid of description. This Honorable Court so held in this case when before it on demurrer. 130 Miss. 376.

By reference to this deed and map it will be seen that no riparian rights or interest passed under this deed to the Georgia Pacific Railroad Company or its grantees, the Southern Railroad Company in Mississippi, and con-

sequently its grantees and co-defendants have acquired none. This case hinges entirely upon this deed and map, the sole question being whether the appellees acquired riparian rights under a deed reading: "Thence North sixty-four and one-half feet to the Mississippi river, thence, up the bank of said river to its intersection with a line one hundred and sixty feet South of and parallel to the North side of Walthall Street." The lines of each and every one of these lots run from some given point on the bank of the river thence up the bank of the river or along the bank. The lot lines never touch the river, the lines do not follow the meanderings of the river or the stream but run along the bank following the survey line laid down on the map which is made a part of the deed, thence away from the river following the description of the survey line marked on the plat, each lot having defined boundary lines none of which ever passed beyond the bank of the river, and each embracing a specific number of acres of land.

Under the rules of law governing conveyancing and the acquisition of riparian rights, no riparian rights are conveyed unless the river is made the boundary line, and that in these cases the river is not the boundary line, but the bank of the river is the boundary line, and the Georgia Pacific Railroad Company and its vendees are restricted to the calls of their deed from Deaton and Skinner. 2 Farnham on Water and Water Rights, page 1475; 4 Am. & Eng. Enc. Law (2 Ed.), 830 and 831; 5 Cyc. 902-903; *Packer* v. *Bird,* 34 Law Ed. (U. S.) 819; *Freeman* v. *Bellegard,* 41 Pac. 289; *Axline* v. *Shaw,* 17 So. 411; *Bradford* v. *Cressy,* 45 Me. 9; *Trustees* v. *Kirk,* 68 N. Y. 459; *City of Boston* v. *Richardson,* 13 Allen 146 (text 154) and authorities cited; *Niles* v. *Parch,* 13 Gray 254; *Murphey* v. *Capland,* 57 Iowa 515; *Morgan* v. *Reading,* 3 S. & M. 366; *Mayhan* v. *Marshall,* 39 Miss. 109; *Bradford* v. *Creassy,* 45 Me. 9; *Crane* v. *Lynch,* 27 Pa. Sup. Ct. Rep. 565; *Hatch* v. *Dwight,* 9 Am. Dec. 145; *Murphy* v. *Copeland,* — N. W. 691; *Dunlap* v. *Story,* Fed. case 4164; *Thomas* v. *Hatch,*

Fed. case 13899; *Rockwell* v. *Baldwin,* 53 Ill. 19. The party must be controlled by the terms of his deed. *Hatch* v. *Dwight,* 17 Mass. 298; *Whitmore* v. *Brown,* 61 Atl. 985; *Hatch* v. *Dwight,* 9 Am. Dec. 145; *Jones* v. *Soulard,* 26 Law Ed. (U. S.) 604; ) Farnham on "Waters and Water Rights," 2514.

Boundary by Shore. "If the boundary is run to the shore, thence along the shore, there is no question but that the shore will be the boundary, and that the title will not go to the center of the stream." 3 Farnham on "Water and Water Rights," 2519.

Boundary by Bank. "The bank is a monument which may be a boundary to a grant, if the corners are fixed by monuments on the bank and the connecting line is run on the bank, so that the intention is plain that the bank was intended as a boundary, the title will not run to or into the water; and it has been held that this rule applies where the description is, "thence till' it strikes the' creek, thence on the West bank of said creek." 3 Farnham on "Water and Water Rights," 2520; *Jones* v. *Cooper,* 50 Ala. 419; *Rochester,* 75 N. Y. S. 392, 40 N. Y. Supp. 1007; *People ex rel. Highway Commrs.* v. *Madison County,* 125 Ill. 9, 17 N. E. 147.

Boundary on Margin of Stream. If the lines are extended to the margin of the water, and then the line is run along such margin to the place of beginning, the edge of the water, and not the thread of the stream, is the boundary. 3 Farnham on "Water and Water Rights," 2522.

Boundary by Bank or Shore of Stream. Where in a deed the land is described as bounded on the bank or shore of a stream, the grantee does not take title to the center, but the bank or shore is the monument, and not the stream, and the line of low-water will usually be the boundary. Am. and Eng. Ency. of Law, page 830; *Cooper* v. *Jones,* 50 Ala. 419; *People ex rel. Highway Commrs.* v. *Madison Co.,* 125, Ill. 9, 17 N. E. 147; *Houston Bros.* v. *Grant,* 112 Miss. 465.

Here the Western boundary was traced along the bank, leaving the land now in controversy between the defined Western boundary of the land described in the deed, and the Mississippi river. Stated in another way, the Western boundary of the land conveyed to the railway company stops short of the river, the monument is the bank and not the river." "Surely no canon of construction will change the fact that the grantor and the grantee agreed upon the boundaries of the land conveyed, and when the agreed boundaries do not extend to or touch the river, we are not authorized to infer that the parties to the contract intended to make the river the Western boundary. *Adams* v. *Railroad Company,* 77 Miss. 315.

*Carl Fox* and *Percy & Percy,* for appellees.

This suit involves riparian rights and the title to land at Greenville, Mississippi, lying under the river between the bank and the thread of the stream and adjoining a tract of land owned by the Appellee—Southern Railway Company in Mississippi. The case is now before the court after a final hearing and full proof of facts which were not shown on the face of the bill which was demurred to.

The decree overruling the demurrer is neither *res adjudicata* nor the law of the case as is claimed by the counsel for Mrs. Archer. In *Brewer* v. *Browning,* 76 So. 267, 115 Miss. 358, it was held that even where the facts shown by the record were the same on the second appeal as on the first appeal, if it further appeared that the first decision was erroneous and that no rights had accrued in reliance upon the first decision, then the error would be corrected.

What is the proper construction of the deed from Deaton and Skinner to the Georgia Pacific Railroad Company and the map attached thereto as a part of it? It will be observed that the call of the south boundary line is "to the

Mississippi river"—not to a point on the bank short of the river, but "to the Mississippi river." We would have to disregard this call "to the Mississippi river"—write it out of the deed—if we say that there was a strip of land between the tract conveyed and the river; or we may take another alternative and write into the deed what the grantor and the grantee did not see fit to write into it, another course back from the river to a point on the bank, and thence up the bank of the river to the Northernmost boundary line. After coming "to the Mississippi river" how far away from the river do we come before running the west boundary line north along the bank at some indefinite and unstated distance from the river? After running "to the Mississippi river" the description continues "thence up the bank of said river to its intersection with a line one hundred and sixty feet south of and parallel to the north side of Walthall Street."

The chancellor correctly stated that the grammatical construction is that the pronoun "its" refers to the river, so that it reads "thence up the bank of said river to the river's intersection with a line one hundred and sixty feet south of and parallel to the north side of Walthall Street." Viewed from the river side, this line of intersection of the river with the bank is "the bank." Viewed from the land side, this line of intersection is "the river." It follows that, if we take as a starting point any point in this line of intersection of the river with the bank and run the line of intersection upstream, we run it "up the bank of said river," within the meaning of the language quoted and within the ordinary acceptation of the word "bank." The presumption is that when land bounded on a stream or the land to a stream is conveyed, the parties to the deed intend that the conveyance shall include all riparian rights and the bed of the stream to its thread. *Archer* v. *Greenville Sand & Gravel Company*, 233 U. S. 60. This was a suit by Mrs. Archer against the Greenville Sand and Gravel Company for gravel taken from the river in

front of her land, and in stating the rule of riparian owner-
ship, the supreme court of the United States paid high
compliment to the decisions of the supreme court of Miss-
issippi in *Morgan & Harrison* v. *Reading,* 11 Miss. (3rd
Smedes & Marshall) 366, and *The Steamboat Magnolia* v.
*Marshall,* 39 Miss. 109.

Counsel for appellants cite a number of cases as sup-
porting their construction of the deed and map, in which,
by the terms of the deeds which were being construed, the
lands conveyed were not bounded on the water but by
lines on the shore or on the bank. These cases were cor-
rectly decided, and they do support the appellant's case
if the map is to be construed as they contend; but if the
heavy line which is the western boundary line of the tract
on the map is "co-incident with the water" as we con-
tend and as we think we have shown, then the cases cited
by counsel for appellants are not in point.

*Sillers & Sillers* and *Bell & White,* for appellant in reply.

The special chancellor, following the description of the
deed, gives it a "grammatical" construction, whereas, he
ought to have given it the construction placed on it by
this court in 120th Miss. — the construction of intent of
parties drawn from the language of the deed, when it an-
nounced the principles of the case when decided by this
court. All the text-writers and all the courts have an-
nounced the same rule as announced by this court. *Hous-
ton* v. *Grant,* 112 Miss. 465; *Southern Railway Company*
v. *Archer et al.,* 120 Miss. 376.

Counsel for appellees contend that all the facts in this
case have been changed most favorable to defendants, be-
cause the original map is of a solid pink color, and not
in accord with the recorded map, where the boundaries
of the tracts are represented in red lines. With all the
ingenuity of counsel in their attempt to uphold the con-
struction given the deed in this case by the chancellor,

they failed to convince.   Their reasoning is neither logical nor convincing.   The decision of the chancellor, if not a reversal of·this court, is a strong intimation that the court did not understand the law or the facts.

*Carl Fox* and *Percy & Percy,* for appellees in rebuttal.

There is no right of recovery in any of the appellants, because the deed itself with the plat attached to it shows that the riparian rights passed to the grantee.   Counsel's argument is in direct contravention of the language of the deed.   The line goes not to the bank but "to the Mississippi river," and, as the learned chancellor in his opinion shows, it goes up the bank to the intersection of the line south of Walthall Street with the river, making the river the western boundary.   Counsel's misquotation of the language of the deed as to this tract of land goes to the very gist of the case.   The line runs· to the Mississippi river and when it goes up the river necessarily it goes up the margin of the river.   Counsel also argues that the land was conveyed for railroad purposes and no riparian rights acquired, and the court evidently assumed that this limitation was contained in the language of the deed. There is no such limitation.

The court has now before it the deed itself, showing there was no limitation as to the purpose for which the land was conveyed, showing that the side lines of the tract of land in controversy went to the river and not to the bank, as stated by counsel in. his brief, and the plat showing that there was no well defined line, not coincident with the river, traced upon the bank as its western boundary.   The whole ground of the decision of the court before, was that there was a strip of land between the western boundary of the land conveyed and the river.   There can be no possible question in the mind of the court now with the original plat before you and with the testimony of these surveyors that there is no such strip of land.   With

such a strip of land excluded, under the language of the court, the land conveyed goes to the river and the riparian rights passed to the grantee. But what was the intention of the parties, the grantors and the grantee?

The undisputed testimony now before the court is that this tract of land was outside of, on the river side of the public levee, unprotected from overflow; that it was not acquired for railroad purposes, but acquired for the purpose of handling coal from the coal fields of Alabama to New Orleans, for a purpose which required the continued exercise of riparian rights. It is plain that if no gravel had ever been discovered in the bed of the river, in fact long prior to such discovery, there would have been and there was a continuous exercise of every imaginary kind of riparian right. The court itself has declared the language of this deed is not clear as to not conveying the riparian rights. See the language of the court of the case reported in 114 Miss. and as said in *Y. & M. V. R. R. Company* v. *Lakeview Traction Company,* 100 Miss. 281, the court in construing a deed "must consider the contemporaneous construction which the parties themselves place upon the instrument" and must ascertain the intention of the parties, and in the *Magnolia case,* 39 Miss. 113, the court recognized that the ordinary rule of construction for deeds of this kind is to construe the grant most strongly in favor of the grantee and upon the further presumption that riparian rights pass to the grantee unless a contrary intent is clearly shown. The question of the passing or non-passing of riparian rights is one upon which testimony is admissible to show intent. The general rule is laid down in 5 Cyc. 892.

Argued orally by *W. H. Sillers* and *Percy Bell* for appellants and *Leroy Percy* and *Carl Fox* for appellees.

Sykes, J. P., delivered the opinion of the court.

For the second time this case is here upon appeal from the decree of the chancery court. The bill of the com-

plainants (appellants here) was first demurred to, the demurrer overruled, and an appeal granted to this court, and the cause was affirmed and remanded. The opinion upon demurrer is reported in 120 Miss. 376, 82 So. 261. Reference is here made to that opinion for the allegations of the bill and the deed in question.

The question involved upon both appeals is whether or not the riparian rights were retained by Skinner and Deaton, the grantors of this deed, or passed to the Southern Railway Company under this deed.

Upon the former appeal, attached to the bill of complaint as an exhibit thereto was a map purporting to be a copy of a map attached to the deed of conveyance. The answer of the railroad company alleged that the lands were purchased in order that the railroad company might operate by river from Greenville to New Orleans a line of coal barges, and, as to another tract covered by this deed, that it was purchased for the purpose of building a bridge across the river. It avers the operation for many years of the coal barge line. In short, it avers that this land which is outside the levee and subject to overflow was not purchased for railroad uses in the ordinary sense of the word, but really for riparian purposes; that the uses for which the land was purchased were well known to and understood by both the grantors and the grantee when the deed was executed, and that immediately thereafter the lands were used for these purposes. The facts sustained these allegations of the answer.

The original deed, with the map thereto made an exhibit to the deed, was also introduced in testimony Three engineers testified as experts as to where the western line conveyed under this deed was, as evidenced by this original map. The particular part of this deed here to be construed reads as follows:

"Thence north sixty-four and one-fourth degrees, nine hundred and fifty feet to the Mississippi river, thence up the bank of said river to its intersection with a line one

hundred and sixty feet south of and parallel to the north side of Walthall street."

The sand and gravel beds here in controversy are either due west of or constitute a part of the land conveyed to the grantee under this particular description.

Upon the former appeal the court held that the determination of the case depended almost entirely upon the question of fact; that, if the deed described the land as bordering on the river, the riparian rights passed to the grantee. If, on the other hand, the nearest boundary to the river is the bank, the riparian rights were retained by the grantors. The opinion states that it is difficult to reach the conclusion that the river is the monument for the western line from a consideration of the recitals in the deed, but that, when the map is examined in connection with the deed, the uncertainty disappears. In this opinion it is also stated that the conveyance to the railroad company was for railroad purposes.

Upon the trial of this case on the merits the learned chancellor dismissed the bill, from which decree this appeal is here prosecuted.

It is the contention of the appellants that the opinion of the court in this cause upon the first appeal settled every question of law and fact in favor of complainants, and that there is no material difference between the questions then and now presented, and that for that reason the cause should be reversed, and decree entered here for the appellants.

It is the contention of the appellees that there are material differences between the cause as now presented upon its merits and the former cause presented upon bill and demurrer; that there is a vital difference between the copy of the map made an exhibit to the original bill and the map made an exhibit to the deed; that the testimony of the engineers in construing the language of the deed, together with the original map attached thereto as an exhibit, shows that it was the purpose and intention of the

grantors by this description above set out to convey to the grantee all of the land to the river, and that there was no land between the calls of the deed and the river, or, stated more concisely, that the western boundary in this deed, when considered with the map, was coincident with the river, and therefore passed riparian rights. This contention of the appellees was the view taken of the case by the learned special chancellor.

On the copy of the map made an exhibit to the bill which was before the court on the first appeal the land purported to be conveyed to the grantee lay within the red line purporting to show the boundary of the land. West of this red line appear two black lines. Whether the eastern black line is meant as the bank of the river or the water line cannot be told; neither can it be said whether the western line is meant to indicate water or a line between the land and water. From this map the western red line is east of the eastern black line. It touches it in some places, and there is a small space between the two lines in others. Assuming, therefore, that the eastern black line was a line between the land and water, it was decided that this map showed land between the land conveyed and the water, and consequently that the riparian rights did not pass.

The original map attached to the deed has all of the land granted to the railroad company under the deed marked in pink. This shows the western boundary of the land in controversy to be very irregular, and apparently bounded on the west by the river. Traced over this western boundary line is a heavy black line. To the west of it, and practically parallel, is a lighter black line. There are no legends or explanations on this map. The description above set out was read to each of the engineers, and, among other questions, each was asked whether or not there was any land lying west of that conveyed in this deed and the river, to which all three answered that there was not. It was also testified that the lighter or west

line was merely a symbol indicating water. It was further testified by these engineers that in their judgment this western line was not run. This testimony in effect was that of Mr. Todd, a civil engineer. Another civil engineer, Mr. Marshall, testified that, from the description read to him from the deed, together with the map, the thread of the Mississippi river was the western boundary line of the land conveyed under the deed. He also testified that there was nothing to indicate that there was any land west of the land conveyed by this deed. The testimony of Mr. Allen, another civil engineer, was that, in his judgment, the deed conveyed all the land to the bank of the river, and that there was no land between the river and the western boundary of this land. The testimony of these three engineers, taken as a whole, means as we view it, and as the learned chancellor so held, that the western line conveyed is coincident with the river. The deed itself is ambiguous. The southern boundary of this western line is clearly the Mississippi river. The ambiguity then follows: "Thence up the bank of said river to its intersection," etc. The southern starting point is clearly the river. Grammatically speaking, the pronoun "its" refers to the nearest noun, which it "river." The intention of the parties is to govern. Grammatical construction should never defeat this intention.

The testimony in this case shows that the land was purchased for the exercise of riparian rights. The purpose of building a bridge across the river and operating a line of coal barges between Greenville and New Orleans would have been defeated had the grantors not conveyed all this land to the river. Or, in another form, if a strip of land had been reserved by the grantors between that conveyed and the Mississippi river, the objects for which these two tracts of land were purchased would have been defeated. The grantee could not have gotten to the river in either instance without going over a narrow strip of land reserved by the grantors. This testimony presents a ma-

terial difference between this case and that presented up-
on the former appeal, because the opinion in that case
held, nothing appearing to the contrary, that this land
was purchased by the grantee for railroad purposes, where-
as this proof now shows the reason of its purchase was
the exercise and enjoyment of riparian rights.

Considering, therefore, this testimony and the testimony
of the engineers as to the meaning of the deed when con-
sidered in connection with the map, we are satisfied that
the chancellor was correct in holding that it was the in-
tention of the parties to this deed to convey all of the land
to the river, and this intention is borne out by the gram-
matical construction of the deed. The deed grammatically
and correctly expresses the intention of the parties to con-
vey the land to the river. This construction is fortified
by the fact that, when a deed is ambiguous, its terms are
to be construed most strongly against the grantor and in
favor of the grantee.

We therefore have in this case the western boundary
of this tract of land starting in the Mississippi river, going
north along he bank of the river, to a point where the
river intersects a certain line. The southern starting point
of the western boundary line is the river; the northern
terminus of this line is also the river; and under prac-
tically all of the authorities the entire western boundary
is therefore the river. The authorities bearing upon this
question are numerous. The rules governing this case
are quite well settled.

In Farnham on Water Rights, vol. 2, p. 1475, the rule
is thus stated:

"If the grant is bounded by a well-marked line on the
bank which is not coincident with the water, the title will
extend only so far as the line, and the grantee will acquire
no riparian rights. So, if the line along the river is de-
scribed as a direct line, the line, and not the river, is the
true boundary. In order to have this rule apply, how-
ever, the line must be described so distinctly as to indi-

cate an intention that the stream shall not be the boundary."

Again in Washburn on Real Propery (6th Ed.) vol. 3, p. 392, section 2334, this rule is thus laid down:

"In respect to streams and rivers which are not navigable, the rule seems to be universal that describing land as running to the stream or the bank, and by it or along the stream or the bank, extends to the middle or thread of the stream, the *filum aquæ,* unless there is something in the description clearly excluding the intermediate space between the edge or bank of the stream and its thread."

In this case, instead of there being anything to indicate an intention that riparian rights should not pass, the testimony, the deed, and the map indicate that the intention of both parties was for the grantee to acquire these riparian rights.

It becomes unnecessary to consider the questions of adverse possession and res adjudicata raised by the appellees.

The decree of the lower court is affirmed.

*Affirmed.*