918 So.2d 780 (2005)
Rebecca Baxter COMEAUX, Appellant,
v.
Larry FREEMAN, Donald Wells, William Amacker, Jr. and Sharon Dedeaux, Appellees.
Nos. 2004-CA-00010-COA, 2004-CA-00523-COA.
Court of Appeals of Mississippi.
May 17, 2005.
*782 Robin L. Roberts, Hattiesburg, attorney for appellant.
William H. Jones, Jackson, Leigh Kennington Berry, Columbia, attorneys for appellees.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
LEE, P.J., for the Court.
¶ 1. This case arises from a dispute over ownership of riparian rights for certain land along the Pearl River in Marion County, Mississippi. Each of the parties owns land on and near the Pearl River. Rebecca Baxter Comeaux owns land along the river and seeks to open a camping and tubing business. Comeaux claims that the adjoining landowners have interfered with her use of her land by launching boats from the land in dispute. The adjoining landowners argue that while Comeaux does own land along the river, Comeaux does not have the exclusive right to use the river and sand bars, which adjoin the property of the appellees. Comeaux filed suit in the Marion County Chancery Court, alleging that the defendants trespassed upon her property, and that such trespass constituted a cloud upon the title to her lands. Comeaux further alleged that one of the defendants, William Amacker, slandered the title to her land, and Comeaux sought damages for the slander.
¶ 2. The parties submitted the action to Chancellor James Thomas for a determination on the merits. The chancellor found that the defendants's property rights extended to the thalweg of the Pearl River, and that the defendants had not trespassed on the river bed which was adjacent to their and Comeaux's respective properties. The chancellor further found that the defendants were entitled to a utility easement on, over, under and across an existing roadway easement.
¶ 3. It is from this ruling which Comeaux now appeals, arguing the following issues which we quote verbatim: (1) does the Appellant's property extend to the thalweg of the Pearl River; (2) whether *783 the court erred in basing its findings on the perceived intent of the grantor; (3) if the Appellant is the owner of riparian rights to the river, whether she may exclude the neighboring property owners whose property is specifically described by metes and bounds descriptions from accessing the river via her property.
¶ 4. Finding no error, we affirm.

STANDARD OF REVIEW
¶ 5. In boundary disputes, a determination of the legal boundary between properties is a question of fact for the chancellor. The same standard applies to questions involving the accuracy of a survey. The chancellor's decision in this regard will not be disturbed on appeal unless we find that the chancellor committed manifest error. City of Waynesboro v. McMichael, 856 So.2d 474, 477(¶ 5) (Miss. Ct.App.2003) (citing Kleyle v. Mitchell, 736 So.2d 456(¶ 8) (Miss.Ct.App.1999)).

I. DOES THE APPELLANT'S PROPERTY EXTEND TO THE THALWEG OF THE PEARL RIVER?
¶ 6. Comeaux argues that her property extends to the thalweg of the Pearl River. In support of this argument, Comeaux cites the case of Archer v. Southern Railway Co. in Mississippi, 132 Miss. 894, 95 So. 680, 682 (1923). Comeaux is mistaken. Archer, in fact, more accurately summarizes the arguments of the appellees.
¶ 7. Archer is the second in a series of suits between Archer and the Southern Railway in an attempt to establish ownership of land along the Mississippi River. The first case is not germane to the case sub judice; however, the second case, to which Comeaux cites, addresses determining the boundary of land bordered by navigable rivers. In Archer, the land in question was bounded on the west by the Mississippi River. In fact, the southern starting point of the western boundary line of land began at the river. The boundary line terminated north of its origin at a point which also intersected the river. Testimony showed that there was no land between this western boundary and the river. The language of the deed provided in pertinent part as follows: "[t]hence north 64 ¼ degrees 950 feet to the Mississippi River, thence up the bank of said river to its intersection with a line 160 feet south of and parallel to the north side of Walthall street." Archer, 95 So. at 681. The Mississippi Supreme Court determined that the river was the boundary line of the property, and that riparian rights passed to the grantee under the deed in question. In support of this conclusion, the supreme court opined as follows:
In Farnham on Water Rights, vol. 2, p. 1475, the rule is thus stated:
"If the grant is bounded by a well-marked line on the bank which is not coincident with the water, the title will extend only so far as the line, and the grantee will acquire no riparian rights. So, if the line along the river is described as a direct line, the line, and not the river, is the true boundary. In order to have this rule apply, however, the line must be described so distinctly as to indicate an intention that the stream shall not be the boundary."
Again in Washburn on Real Property (6th Ed.) vol. 3, p. 392, § 2334, this rule is thus laid down:
"In respect to streams and rivers which are not navigable, the rule seems to be universal that describing land as running to the stream or the bank, and by it or along the stream or the bank, extends to the middle or thread of the stream, the filum aqu, unless there is something in the description clearly excluding the *784 intermediate space between the edge or bank of the stream and its thread."
Archer, 95 So. at 682. The court determined that "[i]n this case, instead of there being anything to indicate an intention that riparian rights should not pass, the testimony, the deed, and the map indicate that the intention of both parties was for the grantee to acquire these riparian rights." Id.
¶ 8. Citing Cox v. F-S Prestress, Inc., 797 So.2d 839 (Miss.2001) and Archer, the chancellor in the case sub judice determined that regardless of the size or navigability of a river, landowners of abutting land own to the thalweg of the stream. Indeed, "[t]he law in Mississippi, as to boundaries on freshwater streams above the ebb and flow of the tides, is that regardless of the size or navigability the owners of abutting land own to the thread or thalweg of the stream." Cox, 797 So.2d at 843(¶ 15) (citing Wilson v. St. Regis Pulp & Paper Corp., 240 So.2d 137, 139 (Miss.1970)).
¶ 9. In the case sub judice, Comeaux purchased "[a]ll of Fraction Section 30, Township 1 North, Range 17 West of St. Stephens Meridian, Marion County, Mississippi" less and except nineteen parcels of land and four easements, all clearly described in metes and bounds in Comeaux's warranty deed. Comeaux argues that only two of the some thirty-six deeds included in the record convey property to the thalweg of the river. Comeaux further argues that "of the remaining deeds, almost half make no mention of the river, but are specific metes and bounds descriptions, and of the deeds with descriptions which mention the bank of the river, the metes and bounds descriptions are to a specific line." Comeaux concludes that under Archer, no riparian rights were transferred by the metes and bounds description, therefore rights to the river and sand bar passed to Comeaux when she purchased "all of the fractional section."
¶ 10. We note that twenty-two parties were joined as parties in interest to the original claim, resulting in a total number of twenty-six defendants. However, in her notice of appeal, Comeaux only names four of the litigants as against whom her appeal is taken, specifically, William Amacker, Jr., Larry Freeman, Donald Wells, and Sharon Dedeaux. Rule 3(c) of the Mississippi Rules of Appellant Procedure requires that the notice of appeal specify the party taking the appeal and the party or parties against whom the appeal is taken.[1] Although Comeaux argues in generalities regarding all of the deeds contained in the record, under MRAP 3, we shall limit our review to the chancellor's decision regarding the parties who are actually named as appellants and appellees in Comeaux's notice of appeal.
¶ 11. Additionally, although Sharon Dedeaux is listed as a party to the appeal, after an extensive review of the record before us, it is unclear to this Court what relationship Sharon Dedeaux has to any of the deeds contained in the record. In Vinson v. Johnson, 493 So.2d 947, 949 (Miss.1986), the supreme court wrote:
Because attorneys continue to allege in briefs facts on which a record is blank, we are constrained to once again make the point. If something happens in a trial court about which a party feels aggrieved, he will not be allowed to complain *785 of it on appeal unless he gets it in the record.
¶ 12. Additionally, the supreme court has determined that an appellate court "may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record." See Burnham v. Stevens, 734 So.2d 256, 266(¶ 39) (Miss.Ct. App.1999); Ditto v. Hinds County, Miss., 665 So.2d 878, 880 (Miss.1995). This Court will not speculate as to what possible interest Sharon Dedeaux has in the conveyances contained in the record; therefore, we affirm the chancellor's ruling regarding Sharon Dedeaux's land.
¶ 13. We next look to the language of the deeds in question.

(a) Deed of Larry Freeman
¶ 14. On July 15, 1999, William Amacker, Jr. deeded Larry Freeman and Jerry Cawthorn two parcels of land, as evidenced in exhibit 28.
¶ 15. The first tract provides in pertinent part as follows:
[t]hence run West 208 feet, more or less, to a point on the East bank of [the] Pearl River for the place of beginning; thence East 208 feet, to a point on the centerline of said road right of way; thence run North 15 degrees West along the center of said road right of way, 210 feet; thence run West 208 feet more or less, to a point on the East bank of [the] Pearl River; thence South along East bank of [the] Pearl River 210 feet, more or less, returning to the place of beginning....
¶ 16. The description of the second tract provides in pertinent part as follows:
[b]eing a point on the East bank of [the] Pearl River; the point of beginning; thence South 81 degrees 17 minutes 52 seconds East 208 feet; to the centerline of a road right of way, thence along said right of way North 15 degrees 00 minutes 00 seconds West 280 feet, thence West 208 feet, more or less to a point on the East bank of the [P]earl River, thence with said river bank, South 17 degrees 23 minutes 36 seconds East 250.44 feet more or less to the point of beginning....
¶ 17. Considering the legal description and referencing the maps included in the record as exhibits 38 and 39, this tract of land is clearly on the bank of the Pearl River. Under the rule as enunciated in Cox, Freeman clearly owns to the thalweg of the river. The chancellor did not err in this determination.

(b) Deed of Donald Wells
¶ 18. On December 13, 1999, William Amacker, Jr. deeded Donald Wells one parcel of land. The deed, which is included in the record as exhibit 8, provides in pertinent part as follows:
From the Point of Beginning run North 66 degrees 33 minutes 38 seconds West for 116.47 feet to a 1/2 inch rebar; thence run North 39 degrees 23 minutes 17 seconds East for 366 feet to 1/2 inch rebar; thence run South 67 degrees 11 minutes 18 seconds East for 15.86 feet to a 1/2 inch rebar; thence run South 83 degrees 32 minutes 34 seconds East for 70.86 feet to a 1/2inch rebar; thence run North 82 degrees 06 minutes 16 seconds East for 55.01 feet to a 1/2inch rebar; thence run South 39 degrees 23 minutes 17 seconds West for 417.46 feet back to the Point of Beginning.
¶ 19. Considering the legal description and referencing the maps included in the record as exhibits 38 and 39, Wells's land clearly borders the bank of the river. Under Cox, Wells owns to the thalweg of the Pearl River. The chancellor did not err in this determination.

*786 (c) Deed of Williams Amacker, Jr.
¶ 20. William Amacker, Jr. is listed as the grantee on two deeds which were included as exhibits in the record. The first of these deeds, exhibit 3, is a conveyance of fifty-one acres from Dixie Hall Kilby to William Amacker, Jr. on August 23, 1990. The second deed, exhibit 27, transfers land from George Bryan Amacker to William Amacker, Jr. on May 24, 1999. However, this land was deeded from Amacker to Larry Freeman and Jerry Cawthorn on July 15, 1999, as discussed in Section (a) of this opinion. After an extensive review of the record in this case, it is unclear to this Court exactly how much, if any, of the original fifty-one acres are still owned by Amacker. This Court is not inclined to estimate or speculate as to precisely how much land Amacker owns in Fractional Section 30, and this Court will not speculate regarding the exact location of that land. "It must be presumed that the rulings of the trial court were correct, and such presumption will prevail, unless the actual record supports the contrary view." Shelton v. Kindred, 279 So.2d 642, 644 (Miss.1973). Accordingly, we affirm the chancellor's judgment regarding land owned by Amacker.
¶ 21. Reviewing only the land owned by Wells and Freeman, it is clear that when Comeaux purchased the remaining land in Fractional Section 30, she did not purchase what Wells and Freeman already owned, namely the rights to the river bordering Wells's and Freeman's land. We do not find that the chancellor erred in his determination that these landowners own to the thalweg of the Pearl River.

II. DID THE CHANCELLOR ERR IN BASING ITS FINDINGS ON THE PERCEIVED INTENT OF THE GRANTOR?
¶ 22. Comeaux next argues that the chancellor erred in considering the "perceived intent of the grantor." We do not agree with this contention. The Freeman deeds clearly indicate that the bank of the river is the boundary. Under Archer and Cox, Freeman clearly owns to the thread of the river. Comeaux further argues that the metes and bounds description provides a boundary line so distinct that under Archer it is clear that the grantor did not intend to use the river as a boundary. We disagree. Freeman's deed clearly provides that the western boundary of his property follows the bank of the Pearl River. There is no indication in the record before this Court that the grantor was referencing a well-marked line other than the bank of the river in establishing the boundary of the land. For a boundary to be a well-marked line which is not coincident to the river, therefore limiting the boundary to the line and not the river itself, "the line must be described so distinctly as to indicate an intention that the stream shall not be the boundary." Archer, 95 So. 680 at 682 (quoting Farnham on Water Rights, vol. 2, p. 1475). Clearly this rule does not apply in the case sub judice, for the deed, although providing a metes and bounds description, indicates that the bank of the river is the boundary.
¶ 23. We next consider whether this rule applies to the land deeded to Wells. Although the language in this deed references a rebar, it also fails to reference a well-marked line to the extent that we could infer that the grantor only intended to deed the land up to the line and not up to the river. Additionally, referencing exhibit 39, the western border of Wells's land clearly falls on a line delineated as the bank of the Pearl River. Thus, we cannot find that the chancellor erred in determining that the bank of the Pearl River is the boundary to Wells's land. Accordingly, these assignments of error lack merit.

*787 III. MAY COMEAUX EXCLUDE THE NEIGHBORING PROPERTY OWNERS WHOSE PROPERTY IS DESCRIBED IN METES AND BOUNDS FROM ACCESSING THE RIVER?
¶ 24. As we affirm the chancellor's finding that Wells and Freeman own to the bank of the Pearl River and therefore to the thalweg of the river, we do not agree that Comeaux may exclude these individuals from their own land. Regarding other landowners whose deeds provide descriptions in metes and bounds, this appeal is limited by the notice of appeal as discussed in Section I of this opinion; therefore, we decline to review the chancellor's findings regarding the rights of the other landowners in this action. This assignment of error lacks merit.
¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF MARION COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT A SEPARATE WRITTEN OPINION.
NOTES
[1] "The notice of appeal shall specify the party or parties taking the appeal and the party or parties against whom the appeal is taken, and shall designate as a whole or in part the judgment or order appealed from. An appeal shall not be dismissed for informality of form of title of the notice of appeal." MRAP 3(c).